Estell *v.* University of The South.

WALLACE AND JENNIE ESTELL *et al v.* THE UNIVER-
SITY OF THE SOUTH *et al.*

1. CHANCERY PRACTICE. *Partition.* Where part of tenants-in-common
   in land have conveyed a portion of same by metes and bounds, chan-
   cery court may direct that partition of the lands be made, if practi-
   cable, so as to give the conveyee the part so conveyed by metes and
   bounds. A tenant-in-common cannot convey a particular part of the
   land by metes and bounds, so as to defeat the rights of his co-tenant
   (if asserted in time), but such conveyance will pass his own title to
   the common property.

2. CORPORATION. A corporation authorized by its charter to hold land'
   may do so as tenant-in-common with a natural person.

FROM FRANKLIN.

Appeal from the Chancery Court at Winchester.
JNO. W. BURTON, Ch.

J. J. WILLIAMS for complainants.

A. S. MARKS and SIMMONS & CURTIS for defendants

DEADERICK, C. J., delivered the opinion of the court.

The original bill in this case was filed in 1871,

in the chancery court of Franklin county. Its object was to set aside a decree pronounced in 1860, partitioning three tracts of land of 5,000 acres each, situate on the Cumberland mountain, on one of which 5,000 acre tract the defendant, the University of the South, is situate.

It is alleged that "the partition was void upon its face," and that the whole proceeding "from the deed of conveyance from the Sewanee Mining Company to the University of the South to the final decree, is one vast fraud" upon complainant's rights.

The causes were heard at October Term, 1881, and both bills were dismissed, and the complainants in the original and cross-bill appealed to this court. Here the Referees upon examination of the causes have recommended the affirmance of the chancellor's decree, and the complainants have excepted to their report.

In 1846, Madison Porter, Thos. S. Logan and Wallace Estell, the latter being the ancestor of complainants, entered and obtained grants for said three tracts of mountain land of 5,000 acres each. And Wallace Estell died intestate in 1847, leaving a widow and eleven children surviving him as his heirs-at-law, complainants being part of said children.

Porter and Logan conveyed in 1854 their undivided interests in said three tracts to the Sewanee Mining Company. Afterwards the Sewanee Mining Company, by deed and by metes and bounds, conveyed to the University one of the 5,000 acre tracts, and the adult heirs of Estell conveyed to the University

their interest in the same tract, leaving the interest of some minor heirs of said Estell still in them.

These conveyances reserved in the grantors the mineral interests under certain conditions. The University contemplated the erection of extensive improvements upon the 5,000 acres conveyed if the title could be secured. Under these circumstances the University of the South filed a petition in the chancery court at Winchester for partition of the 15,000 acres comprised in the three entries. The facts in respect to the original entry by Logan, Porter and Estell were stated, and the conveyance by Logan and Porter to the Sewanee Mining Company, and by said company to the petitioner, and the deed to it was exhibited. The petition alleged that Estell's heirs were owners of an undivided third of the whole 15,000 acres, and stated that most of them had relinquished their interest in the 5,000 acres to it, but some of them were minors, and they therefore still owned their interest in the whole. The petition prays that the shares of those who had not relinquished should be laid off to them out of the 15,000 acres, so as to give petitioner the 5,000 acres conveyed to it..

The Sewanee Mining Company, and all the heirs-at-law of Estell were made defendants, and served with process, or publication duly made as to non-residents.

Guardians *ad litem* were appointed for the minors, and answers filed by them, and a decree was entered appointing five commissioners, including a surveyor, any three of whom were authorized to act. These commissioners were directed to go upon the premises,

and to partition said lands, if it could be done, as to give the complainant its interest, and to give the defendants their interests according to the allegations of the bill, that is, that the other tenants-in-common shall have their shares in such parts of the 15,000 acres as will not interfere with the part conveyed to the University.

The commissioners reported that there were but 10,225 acres. Older and better titles covering parts of each of 'said grants. They set apart to the University the 5,000 acre tract which was conveyed to it, and to the other parties in interest their shares were allotted in the other two 5,000 acre tracts. They say in their report that they nad nothing to do with the 5,000 acres conveyed to complainant. This report was confirmed.

The first exception of complainants is to so much of the report as holds that the University became the absolute owner of said 5,000 acres by the conveyances of the Sewanee Company and the adult heirs of Estell, except the three-elevenths of the one-third of Estell's heirs.

It is insisted for complainants that this is error for two reasons:

First, Because the University cannot be a tenant-in-common with a natural person, and the deed is void for this reason.

Second, The deed is void also because it undertakes to sell by metes and bounds a specific part of the undivided land by an absolute deed, when a deed could only be for an undivided interest.

By Code, section 50, the word "person" includes a corporation. Any corporation authorized by its charter to hold land, may do so, and there is nothing in our law to prevent its doing so as a tenant-in-common with a natural person: See 2 Meigs Dig., new ed., sec. 807.

It is true one tenant-in-common cannot convey a particular part ' of the land by metes and bounds, so as to defeat the right of his co-tenant, if asserted in due time, nevertheless such a conveyance will be valid and effectual to pass his own title to the common property.

The act of 1851–2, Code, sec. 2006, provides that every grant or devise of land, or any interest therein, shall pass all the estate or interest therein of the grantor or devisor, unless the intent to pass a less estate or interest shall appear by express terms, or be necessarily implied in the terms of the instrument. So that we hold the deed was effective to pass, and did pass the title of the grantor to the grantee of an undivided interest of two-thirds as tenant-in-common with the heirs of Estell, to whom the other third had descended.

And this only was the interest claimed by the University in its petition for partition filed against said heirs of Estell and others.

The fourth and fifth exceptions are that the facts disclosed the use of a map in making partition theretofore made of the three tracts, and that complainants' share had been set apart at one corner of the contiguous tracts, in a long strip, and no part of the

University tract was allotted to them. This it is argued is evidence of fraud for which the proceedings should be set aside. We do not think that there is any evidence of fraud. It is true, as argued, that the commissioners report that this had nothing to do with the University 5,000 acres. But this obviously means, so far as the surveying of it was concerned. But they show that they did estimate its value and charge the University with it in apportioning to complainants their share of the residue of the three tracts, and they report their apportionment as an equitable division among the several claimants. And upon examination as witnesses in this case, they and others who are acquainted with the lands depose that the share allotted to complainants was equal and just. That the land thus got was perhaps superior in quality and in timber to that got by the University. None of it was at the time of partition of much value; and the value of it all has been materially increased by the improvements since put upon the University tract. The reservations insisted on by complainints in the cross-bill are that the University was not to sell or lease, etc. It does not appear that any grounds of complaint are shown to justify any inquiry into this collateral question in this case.

Upon the whole we are satisfied that no injustice has been done complainants; that it was competent for the chancellor to direct the share of the University to be laid off to it, as was done, and no injury resulted to complainants by reason of the order, but they received a fair equivalent for their share in

31—VOL. 12.

the partition made, and it would be most inequitable and unjust now to undo what has been done in the partition of the property.

Let the report of the Referees be confirmed, and the chancellor's decree dismissing complainant's bill and the cross-bill be affirmed with, costs.

TURNEY, J., being incompetent, did not sit in this cause.